No. 41.—THE MAYOR AND COUNCIL OF ROME, plaintiffs in error, *vs.* JOHN D. DICKERSON, defendant.

[1.] The Honest Debtors' Act of this State prescribes no form in which the schedule of the insolvent shall be rendered.

[2.] If the inventory fairly apprizes the creditors of the nature of the effects, so as to enable them to hunt them up, it would seem to be sufficient.

[3.] It is not necessary that the schedule should state that it was filed under the *ca. sa.* issued at the instance of the plaintiff.

[4.] A party is an incompetent witness to increase a fund out of which he is to receive a dividend, especially when the witness is a creditor of a bankrupt who has already been discharged from arrest under a *capias*, at the instance of the witness, and where consequently his only hope of getting his demand paid was by fixing a fraud upon the debtor, by his own testimony.

Motion, in Floyd Superior Court. Decided by Judge JOHN H. LUMPKIN.

For the facts in the case, see the decision of the Court.

ALEXANDER, for plaintiffs in error.

WRIGHT and SHROPSHIRE, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This would be a small case were it not that the personal liberty of the citizen is concerned.

[1.] The Mayor and Council of the City of Rome caused John D. Dickerson to be arrested under a *ca. sa.* He gave bond to appear at the next term of the Court to which the process was returnable, to take the benefit of the Act passed in 1823, for the relief of honest debtors. He did appear, and moved the Court to be permitted to take the oath prescribed by law and to be discharged. Counsel for the creditor objected, and applied to enter up judgment against the principal and his securities, on the ground that no schedule had been filed in accordance with the provisions of the Statute. The schedule was in these words:

"Schedule of J. D. Dickerson.
2 drafts of the County Treasurer,.....................$11.50.
Filed in office 11th February, 1853.

A. B. ROSS, Clerk."

Two objections are alleged against the schedule: *First,* that it is without date; and, *secondly,* that it does not state the case.

[2.] In our judgment, neither of these grounds are sustainable. If the schedule fairly apprize the creditors of the nature of the assets, so as to enable them to hunt them up, it seems to be sufficient. *Taylor vs. Williams,* 20 *Johns.* 21.

[3.] And as to the omission in the schedule to shew that it was rendered under the *ca. sa.* issued at the instance of the plaintiff, we hold this to be unnecessary. It was lodged with

the Clerk, and by him filed with the papers in the case. *Sheriff of Fayette vs. Buckner*, 1 *Littell's Rep.* 126.

There is no form prescribed by the Act, in which the schedule of an insolvent debtor shall be made out.

[4.] The plaintiff then tendered an issue suggesting fraud, which was submitted to the Jury, and Riley J. Johnson offered as a witness to prove a covinous conveyance of property by the debtor, reserving to himself an interest therein. Johnson was objected to for incompetency, on account of his interest. As a *ca. sa.* creditor of Dickerson, he had at a preceding term, suggested fraud to a similar application, whereupon an issue was formed and found for the defendant. By this proceeding, the person of the debtor was exempted from incarceration, but it left the judgment debt unextinguished.

I will not undertake to examine as to the nature of the interest which will disqualify a witness, or attempt to reconcile the conflicting authorities upon this rule of evidence. This position, however, we think to be well settled, namely, that a party is an incompetent witness to increase a fund out of which he is to receive a dividend; more especially, if as in this case, the witness is the creditor of a bankrupt who has already been discharged from arrest under a *capias*, at the instance of the witness, and where too, it would seem, his only hope of getting paid is by fixing a fraud upon the debtor by his own testimony. But let it be remembered, that no proposition was made to render Johnson competent by releasing to the other creditors all claim to the fund, which might, by his evidence, be made subject to Dickerson's debts.

When Johnson was the plaintiff, in October, 1852, and was excluded from testifying because a party, the issue of fraud tendered by him was found for Dickerson. And now, when he is excluded on the ground of interest in the event of the suit, the same result has followed. If Dickerson is to be deprived of his liberty for life, therefore, I have a right to assume that it is to be upon the evidence of this judgment creditor. To authorize such a procedure, when the Constitution of the State declares, that the person of a debtor, where there

The Mayor and Council of Rome *vs.* Dickerson.

is not a *strong* presumption of fraud, shall not be detained in prison, after delivering *bona fide* all his estate for the use of his creditors, is abhorrent, I must confess, to every instinct of my nature.

I am the last man that would interpose between creditor and debtor, or that would give to the debtor new means and new motives for defrauding his creditor. I am far from denying that some coercive power is necessary to compel men to perform their engagements, who are able but unwilling; and to force real insolvents to disclose the state of their affairs, and to surrender their effects. I admit that the fraudulent insolvent is a criminal who deserves punishment; and that in moral turpitude, at least, there is little difference between the man who swindles his honest creditor out of his money and the thief who steals a purse. But if the debtor is guilty of fraud, let him be tried and punished upon legal proof; let not the creditor be the witness to establish his guilt, nor the judge to inflict the punishment.

So far from a *strong* presumption of fraud, the conclusion from two concurrent verdicts is almost irresistible, that the surrender is *bona fide.* And why, I would inquire, urge the admission of an interested witness to prove a transfer of property made by the debtor to be fraudulent. Is not the property liable? And does Dickerson's failure to include it in his inventory exempt it from liability? Neither its exclusion or its inclusion could have the slightest effect upon the validity of the transfer. The property is still subject to levy, at the instance of the Mayor and Council, or Johnson, or any other judgment creditor. Even a discharge under the National Bankrupt Act of 1842, which released the property as well as the person of the debtor, and which was indeed an extinguishment of the debt, did not protect property which had been fraudulently conveyed by the bankrupt.

The issue authorized to be formed, under the insolvent laws of this State, is to compel a disclosure of concealed effects, and not to try the title to property in the hands of third persons.

Judgment affirmed.