## McNAIR *v.* FORTNER.

The land claimed as exempt under a "statutory or short homestead" was sufficiently described to validate the exemption, and to operate, in connection with the other circumstances, as constructive notice to one who took a security deed thereto from the head of the family after the exemption was set apart.

Even though the head of the family, at the time of the execution of the security deed, may have represented to the grantee therein that there were no encumbrances on the land, this would not affect the interests of the beneficiaries in the land, nor estop the head of the family from interposing a claim in their behalf when the land was levied on under an execution based upon a judgment on a note secured by the deed.

No. 1392. JANUARY 13, 1920.

Claim. Before Judge Harrell. Grady superior court. January 13, 1920.

In December, 1906, upon the application of Gus Fortner, what is commonly known as "a statutory or short homestead" was set apart to the applicant and his family under section 2866 of the Code of 1895 (Civil Code of 1910, § 3416). The land so set apart was described as "fifty acres of land, to wit: 21 acres of lot of land No. 72, 6 acres of lot No. ——, all in the 19th District, Grady County." On May 10, 1913, Gus Fortner conveyed to

D. G. McNair land described as follows: "Eleven and two thirds acres of land off of lot No. 72 in the 19th District of Grady County, Georgia, and being the middle 11-2/3-acres tract of a 35-acres tract off the east end of a 100-acres tract on the south side of said lot." This deed was given to secure the payment of certain notes. On November 11, 1915, D. G. McNair conveyed to Mrs. L. M. McNair the same land described in the security deed made to him. These deeds were properly recorded. In April, 1918, Mrs. McNair obtained judgment in a suit on the notes against Gus Fortner, in the city court of Cairo; and execution was issued. On May 8, 1918, Mrs. McNair conveyed to Fortner the land described in the deed to her, for the purpose of having the same levied on and sold as his property in accordance with the statute. The execution in her favor was levied on this land on the next day, as the property of Fortner. On June 4, 1918, Fortner as the head of a family interposed a claim to the land. Pending the claim case, and on March 7, 1919, the homestead that had been granted to Fortner as the head of the family in 1906 was amended in the following particular: "That part of petitioner's homestead as set forth above, with reference to the said 21 acres of land, be amended by adding the words, after 'in the 19th district of Grady county,' as follows: 11 acres, more or less, of said 21-acre tract, being more fully described as follows: bounded on north by lands of Goodman Fortner, on the west by lands of Antony Fortner, on the east by lands of Antony Fortner, and on the south by the original land line of the south side of lot of land number 72 in the 19th district of said State and county. 10 acres, more or less, of the said 21-acre tract, being bounded as follows: on the north by lands of Fannie Fortner, on west by the Whigham and Coonbottom public road, and on the south by the original south land line of said lot 72, and on the east by a certain branch known as Old Still Branch." On the trial, which, by consent was had before the judge without a jury, the foregoing documentary evidence was introduced; and D. G. McNair testified, in behalf of the plaintiff, that at the time he took from Gus Fortner, on May 10, 1913, the security deed, Gus Fortner told him that the land was free from any and all liens and incumbrances; that witness was Mrs. L. M. McNair's general agent, and represented her in all transactions; that "he

knew Gus Fortner had possession of this land at the time he took the deed, but if he had any other land he did not know of it." Gus Fortner testified for the claimant as follows: "The land levied on is a part of the 21-acre tract set forth in the pony homestead, the ten acres having been previously sold. He had no other land other than that levied on at the time he made the security deed, and has none other at this time. He told Mr. McNair that there were no mortgages against the land, but did not tell him there was or was not a homestead over it." No other evidence was introduced. The judge rendered a judgment finding the land not subject. The plaintiff excepted, assigning error upon the judgment, because it was contrary to law and without evidence to support it; "because the uncontradicted testimony showed the plaintiff in fi. fa. to be a bona fide holder for value under her security deed, and the description in the pony homestead was too indefinite to be constructive notice to plaintiff; and because the defendant is estopped, by his fraudulent assertions, from claiming said property as executed."

*S. P. Cain,* for plaintiff.

*E. D. Rivers* and *W. T. Crawford,* contra.

FISH, C. J. (After stating the foregoing facts.) The controlling question in this case is, whether the evidence authorized the judge to hold that the plaintiff in fi. fa., or her husband, who was her general agent and acted for her in the transaction, had constructive notice, when the defendant in fi. fa. executed to him the security deed, that the land therein conveyed was a part of the land which had been previously exempted to the defendant as the head of a family under the "statutory or short homestead" as provided for in sections 2366 et seq., of the Code of 1895 (Civil Code of 1910, § 3416).

The exemption here involved was made in 1906, and is therefore covered by the provisions of the Code of 1895. Section 2867 of that Code declared that every debtor seeking the benefit of the exemption "shall make out a schedule of the property claimed to be exempt, and return the same to the ordinary of the county, without making any application for homestead, and it shall not be necessary to publish the same in a gazette. The ordinary shall record the schedule in a book to be kept by him for that purpose,"

etc. In *Braswell* v. *McDaniel,* 74 *Ga.* 323, it was said: "This exemption, now found in section 2040 et seq. of the Code [of 1882], originated in the act of 1822, and has now become a part of the constitution of 1877. In 13 *Ga.* 302, this court held that no form was necessary to procure such an exemption, which holding has never been disturbed since, so far as we are informed. Therefore it is not necessary to set out in the application that the applicant is a debtor." In the case referred to, *Mayor &c. of Rome* v. *Dickerson,* 13 *Ga.* 302 (2), it was held: "If the inventory fairly apprizes the creditors of the nature of the effects so as to enable them to hunt them up, it would seem to be sufficient. In that case the schedule was in these words: "Schedule of J. D. Dickerson. 2 drafts of the County Treasurer—$11.50. Filed in office 11th February, 1853. A. B. Ross, Clerk."

In 74 *Ga.,* supra, it appeared that: "On November 24, 1881, McDaniel filed and had recorded an exemption of personalty, under section 2040 of the Code, including $65.00 worth of provisions, consisting of sixty-five bushels of corn in the shuck, and one thousand pounds of fodder. The petition or statement accompanying the schedule stated that the applicant was a head of a family, consisting of himself, wife and children, whose names and ages were given, and that he claimed the property set out as an exemption." When offered in evidence the schedule of property sought to be exempted from levy and sale was objected to on the ground that it did not appear "from the paper that the applicant was a debtor, or from whose estate the property was taken." It was held by this court that the objections were not good, and that the paper was admissible in evidence. It does not appear that the schedule was objected to on the ground of the insufficiency of identification of the corn. The action, however, was trover for the corn, brought by McDaniel suing for the use of his wife, and a recovery by him was sustained.

It has been held in several cases that the provisions of section 2868 of the Code of 1895, relating to having the land sought to be exempted surveyed and platted by the county surveyor, do not apply where the quantity of land owned by the applicant for exemption is less than the number of acres allowed as an exemption under the statute. *Rogers* v. *Hawkins,* 20 *Ga.* 200; *Pritchard*

42

v. *Ward,* 64 *Ga.* 446; *Branch* v. *Ford,* 99 *Ga.* 763 (26 S. E. 759). The land claimed as exempt in the present case was described in the original schedule as follows: "fifty acres of land, to wit: 21 acres of lot of land No. 72, 6 acres of lot No. ...., all in the 19th District, Grady County." The schedule was filed and recorded in the ordinary's office of Grady County, Georgia. The words, "fifty acres of land," were probably placed in the schedule on the idea that, as that number of acres is exempted under the statute, it was proper to claim all that was allowed. Formerly it was the practice in some of the courts of ordinary to allow an exemption under a schedule setting forth an exact copy of the entire statute providing for the statutory exemption, and embracing all the various classes of property which may be included in a schedule as exempt from levy and sale, with no effort made to specify any particular property as exempt. Such schedules, however, were held to be insufficient, and an exemption claimed thereunder to be void, in *Kendall* v. *Parker,* 146 *Ga.* 260 (91 S. E. 31). In the instant case it can not be said that no effort was made to specify any particular land as exempt, for "21 acres of lot of land No. 72, . . in the 19th District, Grady County," were specified as the land claimed to be exempt. The evidence showed that the land conveyed by the defendant in fi. fa., who applied for the exemption, was a portion of the land specified in the schedule, and which was exempted. The grantee in the security deed testified that the defendant was in possession of the land conveyed in the deed at the time it was executed, and that defendant had no other land, so far as the witness knew. We may safely assume that the defendant in claiming the 21 acres of lot 72 in the 19th district of Grady County owned, or was in possession of, no more of that lot than he desired exempted; for if his financial condition was such as rendered it necessary for him to take the advantage of an exemption, he in all likelihood would have applied for the exemption of as much land as the statute allowed, namely, fifty acres. Section 4530 of the Code of 1910 declares: "Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties." This principle has been

applied in many cases by this court. In our opinion, the judge was authorized to find that the record of the exemption, together with the other circumstances in evidence, was sufficient to excite the attention of the grantee in the security deed, and to put him on inquiry as to which 21 acres of lot of land 72 in the 19th district of Grady county had been exempted to the defendant, the grantor in such deed, and that therefore he had constructive notice that the land he was taking a conveyance to had been exempted, and consequently he did not stand in the position of a bona fide purchaser without notice. Even though Fortner may have represented to McNair, at the time the security deed was executed, that there were no incumbrances on the land, this could not operate as an estoppel upon the beneficiaries of the exemption, or preclude him from setting up their right to the exemption in his character as head of the family. *Sharp* v. *American Freehold &c. Co.,* 95 *Ga.* 415 (22 S. E. 633), and cases cited.

The cases relating to the insufficiency of description of land in levies and deeds, and where year's support is set aside in land, dower, and also where land is set apart as exempt as a constitutional homestead, are clearly unlike the present case, for there are statutes requiring the identity of the land in all such cases. We may remark that the same was true with reference to the "statutory or short homestead" under sections 2, 3, and 14 of the act approved October 3, 1868 (Acts 1868, p. 27). That act, however, was amended by the act approved October 27, 1870 (Acts 1870, p. 74), wherein it was provided that "all that shall be required to enable a debtor to avail himself of the benefit of said law [as to statutory homestead] is to make out a schedule of the property claimed to be exempt, and return the same to the ordinary of the county, without making any application for homestead, and it shall not be necessary to publish the same in a gazette." This provision of the act of 1870 is embodied in the section of the Code of 1895 hereinabove referred to.

*Judgment affirmed. All the Justices concur.*