### POWELL *v.* POWELL *et al.*

1. The head of a family had set apart to him in May, 1913, what is commonly known as a pony homestead. Civil Code (1910), § 3416. In the schedule of property exempted under the provisions of the section referred to the real estate was described as follows: "One third interest in lot of land number 210 in 12th district and 4th section of Walker County, Ga., containing 53-1/3 acres of said lot." Undisputed evidence identified the property in the possession of the plaintiff (now defendant in error) as the southwest one-third of lot No. 210, and as the identical land which was exempted. "The land claimed as exempt under a 'statutory or short homestead' was sufficiently described to validate the exemption, and to operate, in connection with the other circumstances, as constructive notice to one who took a security deed thereto from the head of the family after the exemption was set apart. Even though the head of the family, at the time of the execution of the security deed, may have represented to the grantee therein that there were no encumbrances on the land, this would not affect the interests of the beneficiaries in the land, nor estop the head of the family from interposing a claim in their behalf," when an effort was made to evict under a dispossessory warrant.

2. There was no error on the part of the lower court in the rulings as to the admission or rejection of testimony of which complaint is made.

3. The judge did not err in directing a verdict. It is true that there were many conflicts in the evidence; but it is useless for a jury to reconcile conflicting evidence all of which is as to matters wholly immaterial to the issue to be decided.

No. 4160. FEBRUARY 21, 1925.

Equitable petition. Before Judge Irwin. Walker superior court. November 5, 1923.

*David F. Pope,* for plaintiff in error.

RUSSELL, C. J. 1. U. P. Powell was proceeding to evict Erwin Powell from the possession of 53-1/3 acres of land known as the southwest 1/3 of lot No. 210 in the 12th district and fourth section of Walker County, and the defendants in error (Erwin Powell and his wife, Ella Powell) filed an equitable petition upon which a temporary restraining order was granted. Later, without any hearing having been had upon the temporary restraining order, the case came on for trial; and after overruling demurrers to the petition, the case proceeded to trial and at its conclusion the judge directed a verdict in favor of the plaintiffs. In the bill of exceptions exception is taken to the ruling of the court upon demurrer, to the admission of certain evidence offered by the plaintiffs over the defendant's objection, to the rejection of certain evidence offered by the defendant; and finally error is assigned upon the direction of the verdict. We shall not rule upon the various assignments of error severally or seriatim, because we think this case is controlled, upon the only material issues before the lower court, by the ruling of this court in *McNair* v. *Fortner,* 149 *Ga.* 654 (101 S. E. 772). The *McNair* case, as to its facts, is very similar, if not identical, to those in the case at bar, when certain evidence entirely immaterial to the issue presented is excluded from consideration, as it doubtless would have been in the lower court had objection thereto been interposed by counsel for the plaintiff. In the *McNair* case, as stated by Chief Justice Fish, the controlling question was "whether the evidence authorized the judge to hold that the plaintiff in fi. fa., or her husband, who was her general agent and acted for her in the transaction, had constructive notice, when the defendant in fi. fa. executed to him the security deed, that the land therein conveyed was a part of the land which had been previously exempted to the defendant as the head of a family under the 'statutory or

short homestead' as provided for in the Civil Code of 1910, § 3416."
In the *McNair* case Fortner, who was the applicant and head of
the family, had set apart to him as a statutory or short homestead
"fifty acres of land, to wit: 21 acres of lot of land No. 72, 6 acres
of lot No. ——, all in the 19th district, Grady County." And
thereafter he conveyed to D. G. McNair "eleven and two thirds
acres of land off of lot No. 72 in the 19th district of Grady County,
Georgia, and being the middle 11-2/3 acres tract of a 35-acres tract
off the east end of a 100-acres tract on the south side of said lot."
The deed was given to secure the payment of certain notes. There-
after D. G. McNair conveyed to Mrs. L. M. McNair the same land
described in the security deed made to him. Mrs. McNair obtained
judgment on the notes against Gus Fortner, and execution was is-
sued. Mrs. McNair conveyed to Fortner the land described in the
deed for the purpose of having the same levied on and sold. The
execution in her favor was levied on this land, and on June 4, 1918,
Fortner as the head of a family interposed a claim to the land; and
this court upheld the judgment of the lower court sustaining their
claim. In the instant case Erwin Powell executed a security deed
to one Gilreath to secure the sum of $1000, and conveyed to him
"all that tract or parcel of land lying and being in the twelfth
(12th) district and fourth (4th) section" of Walker County, "and
being lot of land number 210 (two hundred and ten) containing
160 acres more or less." Gilreath conveyed the evidence of in-
debtedness and the security deed to J. A. Sartain; and U. P.
Powell, who swore out the dispossessory warrant, claims under the
warranty deed executed to him by J. A. Sartain, Erwin Powell,
and his two sons, W. B. Powell and Pressley Powell.

So far, the only apparent difference between the case at bar and
the *McNair* case is that in the present case the title of the purchaser
of the exempted property is sought to be asserted by dispossessory
warrant, whereas in the *McNair* case the property was sought to be
subjected to sale and a claim was interposed. In both cases there
was evidence that the applicant for the exemption, the head of the
family, made representations that he had a perfect title, and in both
cases the purchasers of the land claim that they were protected as
bona fide purchasers on the ground that the description of the real
estate exempted was ineffective to give them even constructive
notice. In the *McNair* case, as in this, the point was pressed that the

land set apart was not identified and that it had not been surveyed and platted; but in the *McNair* case it was held, following the ruling in *Braswell* v. *McDaniel*, 74 *Ga.* 323, that in the exemption provided by § 3416 of the code no form was necessary to procure such exemption, and that the schedule of property sought to be exempted from levy and sale was admissible over the objection that it did not appear "from the paper that the applicant was a debtor, or from whose estate the property was taken." In the *McDaniel* case this court approved the ruling in *Mayor &c. of Rome* v. *Dickerson*, 13 *Ga.* 302 (2), in which it was held: "If the inventory fairly apprizes the creditors of the nature of the effects so as to enable them to hunt them up, it would seem to be sufficient. In that case the schedule was in these words: 'Schedule of J. D. Dickerson. 2 drafts of the County Treasurer—$11.50. Filed in office 11th February, 1853.'" It will readily be observed that the description, "one third interest in lot of land number 210 in 12th district and 4th section of Walker County, Ga., containing 53-1/3 acres of said lot," is fully as definite as the description of the land in the *McNair* case which we have quoted above; and as to the latter Chief Justice Fish, speaking for the court, held as follows: "In the instant case it can not be said that no effort was made to specify any particular land as exempt, for '21 acres of lot of land No. 72, . . in the 19th district Grady County,' were specified as the land claimed to be exempt. *The evidence showed* that the land conveyed by the defendant in fi. fa., who applied for the exemption, was a portion of the land specified in the schedule, and which was exempted. The grantee in the security deed testified that the defendant was in possession of the land conveyed in the deed at the time it was executed, and that defendant had no other land, so far as the witness knew. We may safely assume that the defendant in claiming the 21 acres of lot 72 in the 19th district of Grady County owned, or was in possession of, no more of that lot than he desired exempted; for if his financial condition was such as rendered it necessary for him to take the advantage of an exemption, he in all likelihood would have applied for the exemption of as much land as the statute allowed, namely, fifty acres. Section 4530 of the Code of 1910 declares: 'Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of

a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties.' This principle has been applied in many cases by this court. In our opinion, the judge was authorized to find that the record of the exemption, *together with the other circumstances in evidence* [italics ours], was sufficient to excite the attention of the grantee in the security deed, and to put him on inquiry as to which 21 acres of lot of land 72 in the 19th district of Grady County had been exempted to the defendant, the grantor in such deed, and that therefore he had constructive notice that the land he was taking a conveyance to had been exempted, and consequently he did not stand in the position of a bona fide purchaser without notice. Even though Fortner may have represented to McNair, at the time the security deed was executed, that there were no incumbrances on the land, this could not operate as an estoppel upon the beneficiaries of the exemption, or preclude him from setting up their right to the exemption in his character as head of the family. *Sharp* v. *American Freehold &c. Co.,* 95 *Ga.* 415 (22 S. E. 633), and cases cited."

In the present case Upton Powell admitted that he knew Erwin Powell and his family were in possession at the time of his purchase. He swore he found him there prior to the purchase, at the time of the purchase, and that he was still in possession. Taking into consideration also that the exemption was of record and referred only to 53-1/3 acres of lot No. 210 which he knew contained 160 acres, he was charged with the duty of ascertaining the identity of this exact 53-1/3 acres with relation to the entire lot No. 210, which could have been ascertained as well before his purchase as it was fully disclosed by the evidence adduced in the trial of the case. It is strenuously insisted in this case, however, that Erwin Powell, as applicant for the pony or short form homestead, could not have had set apart 53-1/3 acres, because he was only entitled to fifty acres, and also because land owned in common can not be set apart until there has been a partition. As to the setting apart of the 53-1/3 acres, we can say, as did Chief Justice Fish, that it must be assumed that he sought to have all he had exempted, and the petition for exemption itself shows that if he had had more than 53-1/3 acres he could have taken more than 53-1/3 acres, because he had five minor children, and he was entitled to have an exemption of five acres for each of these, making twenty-five acres, or

seventy-five acres in all, instead of 53-1/3 acres, which amounts to nothing more than that for his five children there was exempted only 3-1/3 acres, to which they were entitled. It appears without dispute, and even from the testimony of Upton Powell, that there had been a division of the 160-acre tract of land between Erwin Powell and his two oldest sons before the exemption was applied for, and the exemption does not set apart an undivided one-third interest in lot No. 210, but a one-third interest in 53-1/3 acres of lot No. 210, which, if it does not in itself indicate that the interest of the applicant·had been in some way apportioned to him, was at least enough, under the principle announced in *McNair* v. *Fortner,* supra, to put any purchaser of lot No. 210, or of any portion there-of, upon inquiry as to what were the real rights of Erwin Powell as head of the family. So we think the lower court properly over-ruled the demurrer, and that upon consideration of all the evidence adduced he properly directed a verdict.

2. In view of what has been said above, there was no error in rejecting and ruling out the deed from Erwin Powell, W. B. Powell, and Pressley Powell to J. F. Gilreath upon the ground that it was irrelevant and immaterial to the issue in the case. Construc-tive notice of the exemption would apply to him, as well as to Upton Powell, and it may also be said that upon the same grounds the deed from Gilreath to Sartain was properly excluded, even if the assignment of error based upon the ground "that this deed was in support of the plea and answer and theory of the defense, and that the exclusion of the same from evidence curtailed the defense illegally" presents anything for the consideration of this court. Likewise the court properly excluded the deed made by J. A. Sar-tain, Erwin Powell, and his two sons, Pressley and W. B. Powell, upon objection that the deed was not made in accordance with the statute in such cases, in that Mrs. Powell did not sign the same and she would not be bound by it, although the plaintiff in error specif-ically assigns error on the ground "that this deed was vital to the defense as showing the very title under which he instituted the dispossessory-warrant proceedings enjoined, and the right of the plaintiff to recover therein and resist the injunction suit, and that its exclusion was error of law." The court did not err in admitting the homestead schedule over the objection that the description of the property sought to be set apart was too vague, uncertain, and

indefinite, or for the reason that it had never been surveyed or platted, or for the reason that an *undivided one-third interest can not be set apart under a pony homestead.*

Several objections are taken to the court's action in admitting parol evidence in aid of the description contained in the schedule of the property sought to be exempted by Erwin Powell, but none of them are meritorious. We apprehend the rule to be well settled that if the description of land is sufficient to supply the "key," parol evidence may be admitted to unlock and discover the true description of the property in question.

There was no error in permitting the witness Erwin Powell to testify that he did not authorize an attorney to file suit in the superior court to sell or encumber the land, over the objection that "parties are bound by proceedings filed by their attorneys, and same can not be attacked except by a direct proceeding." However, as the testimony as to the employment of Mr. Pope was in conflict with that of Erwin Powell, the court might not have been authorized to direct a verdict had it been material to determine this point in the investigation. But inasmuch as the real question in the case was as to the knowledge of Upton Powell of the existence of the homestead, and as the deeds which were introduced by him showed that the provisions of the order granted by the judge of the superior court had not been complied with, there was no error in excluding the deeds which resulted from that order, and it became immaterial whether or not the attorney alleged to have obtained the same acted with or without authority.

3. The record discloses quite a large number of instances where there were conflicts in the evidence, and upon this ground the plain-tiff in error bases an exception that the judge erred in directing a verdict. As stated at the outset of this opinion, the case is controlled by the ruling in the *McNair* case, supra, upon every material question pertaining to the issue. The defendant sought to dispossess on the strength of a deed which conveyed no title. The plaintiffs, by their petition, set up that fact. The only question at issue was whether Upton Powell had the right to eject Mrs. Ellen Powell as the beneficiary of the homestead, by reason of the deed executed and delivered to him by J. A. Sartain, Erwin Powell, Pressley Powell, and W. B. Powell. The deed was not signed by Mrs. Powell. There was no order of the superior court to sell the

property for reinvestment or to sell a portion of the property to improve the remainder. The order of the judge authorized the pledging of the homestead as security. We think the trial judge properly treated the order, which permitted the head of the family for whose benefit the pony homestead was set apart and exempted and his wife to encumber the land set apart by a deed given as security for a loan of $1000, as a nullity. We know of no provision of law as to the short or statutory homestead which authorizes burdening the property set apart with an encumbrance for the purpose of obtaining a loan. There have been several statutes passed providing for the sale of the pony homestead since the passage of the original law in 1822, but in none of them is there a hint that anything except a sale of the property for the support of the family is allowable. In all of the decisions we have been able to investigate, as well as the acts of the General Assembly with relation to the pony homestead, the estate conferred by the exemption has been treated as a temporary provision for the needs of the family of the debtor, somewhat similar in nature to the provisions for a year's support allowed by law to a widow and the children of the deceased. The insolvent debtor has his option, under the provisions of § 3404, to take the benefit of the constitutional homestead or to avail himself of the pony homestead. If he takes the constitutional homestead, provision is made by the Civil Code, §§ 6584, 6590, for a sale of the property by order of the judge of the superior court, and in such an event the sale can be had only for purposes of reinvestment, and the propriety of the reinvestment is determined by the judge of the superior court himself or by a receiver appointed by him.

A pony homestead, by the provisions of the act of 1876 (Code, § 3397), may be sold by an order of the judge of the superior court; but the law, so far as we are able to ascertain, does not contemplate the pledging of a homestead to secure a prospective loan. As the pony homestead from 1822 to the present time has been considered a healthful provision for the benefit of the family of an insolvent debtor and for the support of his family, it does not naturally fall in the same class with the provisions of the homestead of 1868 or of 1877. These larger homesteads look to furnishing the family of the debtor a permanent place of residence, and, if the land be agricultural, also the means of making a livelihood. The pony

homestead does not look to that purpose. It is for the support of the family of one who finds himself likely to be stripped of the means of supporting his dependents. This is emphasized in § 3416, and the rulings of this court in which it was held that the exemption under the pony homestead was void for the mere reason that the dwelling-house set apart was of the value of $519 instead of $500, and in another case that the exemption of farming land was invalid because the dwelling-house was of a greater value than $200; plainly showing that this court has never in the past contemplated that the exemption set apart was a permanent investment to afford a means of borrowing money, but that rather it was a mere provision for temporary support and protection of a helpless family until by their own efforts they could better their condition. This appears from the fact that formerly the pony homestead could be sold by the debtor and his wife, first with the consent of the county court, then with the consent of the ordinary, and the fund derived from the sale, instead of being reinvested, was turned over to the husband and wife for the support of their family. In this case the deed upon which the plaintiff in error relies was never signed by the wife; and hence, even if the transaction were treated as a sale, the provisions of the law in reference to the sale of the pony homestead were not complied with, and the effort to sell was vain and ineffectual. The pony homestead still stands, as it always has, for the benefit and support of Erwin and Ella Powell and their minor children.

Even if he was authorized by law to grant the order made in this case, in view of the fact that the encumbrance sought to be removed was itself unauthorized in the first instance, nevertheless the evidence entirely fails to show that a bond for title was delivered by Gilreath in accordance with the provisions of the judge's order, nor is there any evidence that the improvements on the property provided for in the order of the judge were ever made, and the sale to Powell by which the debt was sought to be collected was made in a manner contrary to that prescribed in the order permitting the loan. Even if Erwin Powell and his wife both employed the attorney, as testified to by him, the fact that Mrs. Powell did not sign the deed would, of itself, render the conveyance upon which Upton Powell relied ineffectual to enable him to proceed by dispossessory warrant. For this reason the judge, in directing a ver-

dict, very properly considered only such evidence as was relevant, and as to this there is no conflict. The fact that there may be conflicts as to immaterial matters would not impose upon the jury the duty of reconciling such conflicts or of appraising the credibility of the testimony as to immaterial matters; and for that reason, in this instance, the judge did not deprive the jury of any of its functions or prerogatives and thereby take away from plaintiff in error any right of trial by jury accorded him by law.

*Judgment affirmed. All the Justices concur, except Hines, J., dissenting.*